## KUHNE et al. v. KILLIAN.
### No. 5711.

District Court, N. D. Ohio, E. D.
Sept. 6, 1939.

J. Ralph Barrow and Bruce W. Bierce, both of Akron, Ohio, and Robert W. Wilson, of Cleveland, Ohio, for plaintiffs.

Richey & Watts, of Cleveland, Ohio, for defendant.

WILKIN, District Judge.

This case was filed under authority of Title 35, Sec. 63, U.S.C., 35 U.S.C.A. § 63, Sec. 4915 Revised Statutes. The issues involved were determined twice in the Patent Office on a declaration of interference (No. 65637) between two rival applicants, Fred L. Killian and Bernhard G. Kuhne. The cause was first heard before an Examiner of Interferences and his decision in favor of Killian was then reviewed and affirmed by the Board of Appeals. The case was submitted in this Court on the record in the Patent Office, as provided by said Section 63, and further testimony was adduced. Such additional testimony was directed mainly to the issue raised by paragraph XII of the Bill of Complaint and the denial contained in the twelfth paragraph of the answer and the further allegations contained in the fifteenth and sixteenth paragraphs of the answer.

The principal contention of the plaintiff at the trial was that the testimony of one Isaac W. Robertson had not been given proper credence and consideration by the Examiner and the Board of Appeals. The plaintiff's purpose was to explain the testimony of said Robertson and give the circumstances at the time of his examination before the Examiner. The decision of the Board of Appeals says: "The Examiner of Interferences did not mention the testimony of Robertson, and we have not considered it and have given it no weight. The party Killian, in his brief, urges that this testimony should have the effect of vitiating the entire testimony in Kuhne's proofs. We have carefully noted all the matter set forth on pages 72 to 81 of the Killian record, the statement made on pages 460 to 462 of Kuhne's record and the discussion concerning the Robertson testimony in the briefs of the parties. It seems to be apparent from the record that the member of the firm of Kuhne's attorney who took most of the Kuhne proofs was on the verge of a complete breakdown while the proofs were being taken. It also appears that the other member of the firm shortly thereafter, of his own accord, introduced testimony to clear up the situation in regard to the Robertson testimony. We wish it to be understood that we do not condone any irregular testimony or any irregular circumstances surrounding it, but we think any irregularity deserves severe condemnation. However, under all of the circumstances here, we do not think we are

justified in disregarding all of the Kuhne's proofs, but we deem it sufficient to disregard the proofs of Robertson. This is particularly so because we find that Kuhne's proofs are insufficient for him to prevail."

The controversy over the credibility of the Robertson testimony arose from the fact that he had said at the hearing before the Examiner that he had no interest in the claim of the plaintiff, Bernhard G. Kuhne, although it was subsequently shown at such hearing that during the evening preceding the giving of such testimony he had entered into a contract by which he was to be paid ten per cent of all royalties derived from latex patents, the patent in dispute being a process for making dipped rubber goods from latex.

On behalf of plaintiff such testimony is now explained by showing that the contract was not in the possession of the witness at the time he testified but was being mailed to his residence in California, and further that the witness was not a lawyer and was not sure of the legal effect of the contract. It was further shown that the witness had had a previous understanding that he was to receive such ten per cent royalty and that his insistence before giving his testimony that such understanding should be embodied in a contract had nothing to do with or no effect upon his testimony. The testimony discloses that the witness Robertson had given part of his testimony before the Examiner and that then there was an adjournment until the next morning. That night Robertson made demand for settlement of his claim for ten per cent of royalties. A lengthy discussion ensued: Robertson testifying at the trial that, "I had been put off too much. I wanted a settlement before I went ahead." Finally a written contract was formulated providing for the royalty and some notes were executed, all of which were mailed to Robertson. The testimony further reveals that Mr. Barrow, who was at that time conducting the case for the Kuhne claims, suffered a physical and nervous collapse, and was prevented thereby from properly explaining the testimony and conduct of the witness Robertson. Mr. Barrow's former partner came into the case thereafter and conducted the hearing before the Board of Appeals.

■ After careful consideration of the testimony of Robertson at this trial, the Court does not feel that it warrants a change in the decisions of the Examiner and the Board of Appeals. His explanation does not justify his conduct. And the additional testimony which he offers does not convince the Court that the Patent Office was wrong in its conclusions. To demand anything as consideration for testifying casts at least some shadow upon the credibility of the testimony, even if what is demanded is no more than the witness's due. The making and granting of demands under such circumstances should not be encouraged by counsel nor condoned by courts. The law expressly permits a witness his mileage and a fee. Expert witnesses are frequently paid more, but they are always required to disclose on cross-examination how much and by whom they are paid. The witness Robertson had agreed to come from California and testify if his expenses were paid, and it had been agreed that his expenses should include an allowance of $15 a day. That having been arranged, he should have kept faith and given his testimony freely. His rights under the alleged earlier contract could and should have been settled later. His further demands at the time tended to defeat the whole purpose of his trip from California. But that is not the worst of his conduct. His demands were made and then, after his demands had been met, when he was asked on the witness stand whether he had an interest in plaintiff's claim, he answered "None whatever." That answer was wholly inconsistent with his obligation to tell the truth, the whole truth and nothing but the truth. After making the most charitable allowances for the witness's want of legal knowledge, and taking into consideration the nature and conditions of the settlement, still the conclusion is inescapable that the witness's answer was not the whole truth and not even an attempt to be frank.

■ Counsel very generously assumes responsibility for the failure to offer the contract in evidence and explain the conditions, and he accounts for such failure by his ill health and nervous collapse. His desire to save his client from the evil consequences of such illness is commendable and the Court has therefore given careful consideration to all the additional testimony. But after all explanations and allowances are made, still the Court is unconvinced that the former decisions are wrong.

The Examiner of Interferences and the Board of Appeals upheld the Kuhne claims to priority of conception, although both claimants had been making dipped rubber goods for several years. By applying similar rules to both the Kuhne and the Killian claims as to the new process, both the Examiner and the Board held that neither claimant had proved actual reduction to practice. The Killian claims were given priority because Killian filed first, such filing being considered constructive reduction to practice. On the issue of originality, both the Examiner and the Board rejected the claim that the Kuhne process and apparatus had been disclosed to Killian before Killian filed. Both tribunals held the evidence insufficient to establish that the process covered by the counts was carried out by operating the Kuhne machine in the presence of Killian. The decision of the Board states: "Whatever was done at the meeting, it is not definitely established by the evidence that the process covered by the counts was disclosed to Killian." While the testimony at this trial clears up the fact that there were two meetings, and to that extent harmonizes some otherwise inconsistent statements, still it is not certain that the operations at the Gammeter shop were a disclosure of the process and apparatus defined in the counts. True Robertson now testifies categorically that a motor and latex were used (Page 134-5 transcript)—but in the light of all the evidence, what was done at the Gammeter shop remains rather experimental and indefinite. Latex was well known in the trade and the process defined in the counts was one as likely to develop from former procedure in making dipped rubber goods, as from disclosure.

The law has never favored an inventor who fails or neglects to make his invention available to the public by actual reduction to practice or by filing an application. If such failure or neglect continues until some other inventor has filed, the latter inventor, though subsequent to the former as to conception, will be considered prior in right. The law seems to impose a penalty for such neglect. It is sometimes referred to as estoppel, sometimes as burden of proof, and sometimes as a requirement of proof of diligence. Without discussing the accuracy or adequacy of such terms, the plaintiffs have failed to prove that the defendant is not entitled to the favored position which prior, though only constructive, reduction to practice entitles him. The Killian application was not only filed about a year prior, but the product was on the market before the Kuhne application was filed. The testimony creates the impression that the Kuhne experiments had not crystallized into a process sufficiently definite for earlier filing.

As the Court of Appeals of the Sixth Circuit said in the case of Cleveland Trust Company v. Otto Carter Berry and General Motors Corporation, 99 F.2d 517, 522: "The decision of the Patent Office * * * must be accepted as controlling unless the contrary is established by testimony which in character and amount carries thorough conviction." Plaintiffs have failed to create such conviction.

Finding and decree for defendant.